Argued September 11, affirmed December 9, 1970

TABLER, *Appellant, v.* STANDARD INSURANCE
COMPANY, *Respondent.*

477 P2d 709

*George A. Rhoten,* Salem, argued the cause for ap-
pellant. With him on the briefs were Robert L. Engle,
Eichsteadt, Bolland & Engle, Woodburn, and Rhoten,
Rhoten & Speerstra, Salem.

*John R. Faust, Jr.,* Portland, argued the cause and
filed a brief for respondent.

Before O'CONNELL, Chief Justice, and MCALLISTER,
DENECKE, HOLMAN, TONGUE, HOWELL and MENGLER,
Justices.

HOLMAN, J.

This is an action by the beneficiary of a deceased insured upon the double indemnity provision of a group accident policy issued by the defendant insurance company. The plaintiff appealed from a judgment of involuntary nonsuit.

The policy provided benefits for loss of life "* * * as a direct result of accidental bodily injuries, independently of all other causes * * *." It also provided that "* * * no payment will be made for any loss caused wholly or partly, directly or indirectly by: * * * (2) bodily or mental infirmity, sickness or disease, * * *."

Decedent was 52 years of age and was the chief security officer at MacLaren School for Boys, which is an institution for the incarceration of boys who require custodial care because of a propensity for antisocial action. While the decedent was on duty at the institution, a boy escaped from custody by climbing over a fence and crossing a plowed field. As this was occurring, decedent drove his motor vehicle up to the fence, which was about four feet high and made of woven wire with one or two strands of barbed wire across the top. Decedent climbed the fence and went to some brush about 150 yards distant in which the boy had concealed himself. The decedent walked alongside the edge of the brush and, upon seeing the boy, asked him to come out. The boy did and, at the same time, he held out his hands, enabling decedent to put handcuffs on him. The two walked back to the fence. The decedent first climbed over and then helped the boy to do the same. They then entered decedent's vehicle and drove back to the institution buildings.

It is not entirely clear at what rate of speed decedent followed the boy across the plowed field. The boy, in testifying, used the words "[he] chased me," but never described decedent as doing anything more than walking fast. There was no violence in the boy's actual capture or in his return to the institution.

After taking the boy inside, decedent walked over to a desk, asked an attendant for a pen, and then collapsed to the floor. A physician, who was present at the institution, was immediately called, but the decedent was dead upon the physician's arrival. The physician was of the opinion that death had been immediate.

An autopsy revealed the decedent had been suffering from arteriosclerotic heart disease which was relatively well advanced. Death had been caused by the sudden, complete occlusion by a blood clot of the left anterior descending coronary artery. The clot had occurred at a point where the disease had narrowed the artery, thus slowing up the blood and making it conducive to clotting. There is no evidence that the decedent was aware of his diseased condition, but he was aware that his blood had a high cholesterol content.

There was medical testimony that the apprehension of the boy by decedent caused physical and emotional stress which was probably a major contributing factor precipitating the occlusion. There was also uncontradicted testimony that if the decedent had not had coronary heart disease, he would not have had the occlusion.

The case is governed by our recent opinion in the case of *Perry v. Hartford Accident and Indemnity Co.*, 256 Or 73, 471 P2d 785 (1970). The language in

the policy there construed was substantially identical with the language with which we are here concerned. Our holding was as follows:

> "We have concluded that where pre-existing disease substantially contributed to death or disability, there is no coverage under the present policy language. This means that the question of coverage will be primarily one for the jury except in those instances where the court can say as a matter of law either that there was no evidence that disease substantially contributed to death or disability or that it has been shown conclusively that it did so contribute." 471 P2d 785 at 789.

We believe the medical evidence in this case conclusively shows that decedent's pre-existing heart disease substantially contributed to decedent's death.

The judgment of the trial court is affirmed.

TONGUE, J., specially concurring.

I concur in the result of this decision solely because the primary issue presented for decision, relating to the interpretation of the provisions of an insurance policy in such a case, was recently decided adversely to the plaintiff in *Perry v. Hartford Accident and Indemnity Co.,* 256 Or 73, 471 P2d 785 (1970), in which I did not participate.